IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| UNITED STATES of AMERICA | PLAINTIFF/RESPONDENT |
| V.  No. 5:06-CR-50056 <br> No. 5:08-CV-05062 | |
| RENE VILLANUEVA-CAMACHO | DEFENDANT/PETITIONER |

**REPORT AND RECOMMENDATION**

Before the undersigned for report and recommendation is the petitioner's Habeas Corpus Petitions (Doc. 33) filed March 21, 2008 under 28 U.S.C. Section 2255 to vacate his conviction. The Government filed its Response (Doc. 38) on July 1, 2008 and the Petitioner has not filed a Reply.

**I. Background**

On September 27, 2006, the petitioner, Rene Villanueva-Camcho, was named in a one-count Indictment filed in the United States District Court for the Western District of Arkansas. The Indictment charged Petitioner with being an alien who had been convicted of an aggravated felony, and who was thereafter removed or deported from the United States on or about January 7, 2004, was found to be in the Western District of Arkansas, having knowingly and unlawfully re-entered this country without having obtained permission from the Attorney General of the United States or the Secretary of the Department of Homeland Security to re-enter the United States. (Docket #2)

On October 5, 2007, Villanueva-Comacho appeared for arraignment, and the Federal

1

Public Defender was appointed as counsel. (Docket # 4) On November 16, 2006, Villanueva-Comacho appeared with counsel before the Honorable Jimm Larry Hendren, Chief United States District Judge for the Western District of Arkansas, for a change of plea hearing. A written plea agreement was presented to the court which set forth that Villanueva-Comacho would agree to plead guilty to the One Count Indictment. The government agreed that no other federal charges which stem from the activities described in the Indictment would be brought in the Western District of Arkansas, that it would make no recommendation as to what specific sentence would be imposed, and that it would not object to a finding by the probation office or a ruling of the court which awarded him an appropriate-level decrease in the base offense level for acceptance of responsibility.

On February 6, 2007, the Probation Office issued Villanueva-Comacho's Pre-Sentence Report. The PSR assessed a base offense level of 8. (PSR ¶ 27) The PSR added a 16-point enhancement because Villanueva-Comacho was previously deported after a felony conviction for a crime of violence, pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii). (PSR ¶ 28) Villanueva-Comacho received a 3-point reduction for acceptance of responsibility (PSR ¶¶ 33, 34) resulting in a Total Offense level of 21. (PSR ¶ 35) Villanueva-Comacho was assessed twelve points of criminal history, putting him in criminal history category V. (PSR ¶ 47) The resulting advisory guideline range was 70 to 87 months. (PSR ¶ 63) Neither the government nor the defendant had any objections to the PSR. (See PSR addendum dated February 27, 2007)

On March 22, 2007, Villanueva-Comacho appeared for sentencing. The District Court adopted the advisory guideline range as set forth in the PSR and sentenced Villanueva-Comacho to a bottom-of-the-guideline-range sentence of 70 months imprisonment, three years supervised

release, $1000 fine, and $100 special assessment. Villanueva-Comacho did not appeal his conviction or sentence.

The Petitioner now brings this action contending that 1) "the Defendant/Petitioner did not commit an offence against the United States, as Congress, defined the term "United States", 2) "the United Stated [sp] of America is not the proper party and no standing Article III", and 3) "under Assimilated Crimes Act, United States, did not show that agency gave notice of acceptance of jurisdiction to governor of the state".

As to each claim the Petitioner asserts that he did not appeal the issue because of "ineffective assistance of trial counsel", (Doc. 1) and that counsel was ineffective for "failing to seek a downward departure based on the fast track program". (Doc. 34, p. 7)

## II. Discussion:

Arguments One, Two and Three are procedurally barred. The arguments were available to Villanueva-Comacho at the time of his sentencing but were not raised. The arguments also could have been raised in a direct appeal but Villanueva-Comacho failed to directly appeal his conviction or sentence. Because habeas relief is an extraordinary remedy which will not be allowed to do service for an appeal, significant barriers exist in the path of a petitioner who seeks to raise an argument collaterally which he failed to raise on direct review. *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001)(citing *Bousley v. United States*, 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)) "More specifically, a claim unraised on direct appeal is procedurally defaulted unless a petitioner can demonstrate (1) cause for the default and actual prejudice or (2) actual innocence." Id.; see also, i.e. *Swedzinski v. United States*, 160 F.3d 498, 500 (8th Cir. 1998)(where issue is raised for the first time in a § 2255 motion and petitioner did

not raise the issue at trial or on direct appeal, the issue is procedurally defaulted.)

**Ground One**

As his first ground for relief, Villanueva-Comacho argues that he "did not commit an offense against the United States, as Congress defined." (Docket #33, p. 5)

It appears that the Petitioner is contending that the statute giving the District court jurisdiction is ambiguous because it does not "define what the term 'Offenses against the laws of the United States' means". (Doc. 34, p. 1)

18 U.S.C. § 3231provides, in part: "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." Villanueva-Comacho was convicted of violating 8 U.S.C. §§ 1326(a) and (b)(2). The essence of the petitioner's argument is that "the current definition Congress has given to the term "united states" does not include "federal laws" and that the current definition refers to laws of the individual states, the District of Columbia, the Commonwealth of Puerto Rico, Guam and territories and possession. (Doc. 34, p. 1) The argument is not persuasive.

In *United States v. Schmitt*, 784 F.2d 880, 882 (8th Cir. 1986), the court held that district courts have jurisdiction over not only offenses listed in Title 18, but also to federal offenses under other Titles. In Schmitt, the offense was under Title 26. "By statute, district courts are given original jurisdiction, exclusive of the courts of the states, of all offenses against the laws of the United States. Thus they always have jurisdiction when a federal offense is charged. . . ." Since federal criminal prosecutions must rest on an Act of Congress defining the crime, it is clear that all such cases 'arise under' the laws of the United States, within the meaning of the constitutional grant of jurisdiction. 13B Wright, Miller and Cooper, Federal Practice and

Procedure: Jurisdiction § 3575 at 244-45 (2d ed. 1984).

18 U.S.C. § 3231 is not ambiguous. The United States is sometimes referred to as the "Federal Government." In *Kitchens v.Steele*, 112 F.Supp. 383 (W.D. Missouri 1953), the court stated: "Ever since the case of United *States v. Worrall*, 2 Dall. 384, 2 U.S. 384, it has been universally recognized that Federal Courts have no common law jurisdiction in criminal cases. The jurisdiction of such Courts is wholly derived from Acts of Congress." The "United States of America" is often referred to as the "United States." Whether the country is referred to as "United States of America", "The United States of America", "The United States", or "United States," the meaning is clear and petitioner's argument is frivolous.

**Ground Two**

As his second ground for relief, Villanueva-Comacho states that "The United States of America is not the proper party and no standing Article III." (Docket #33, p. 6) Villanueva-Comacho argues in his memorandum that the "United States" is the proper party, not the "United States of America." He argues that this Court has no authority to act in the name of the "United States of America." (Doc. 34, p. 3) A complaint " 'is frivolous where it lacks an arguable basis either in law or in fact.' " *Cokeley v. Endell*, 27 F.3d 331, 332 (8th Cir.1994) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989)). *Williams v. Hopkins,* 130 F.3d 333, 335 (C.A.8 (Neb.),1997) As set forth in the response to Argument One, this argument is frivolous. The "United States" is the same entity as the "United States of America."

**Ground Three**

As his third ground for relief, Villanueva-Comacho argues that "Under Assimilated

5

Crimes Act, United States, did not show that agency gave notice of jurisdiction." (Docket #33, p. 8) The Assimilated Crimes Act has no relevance to this case. Villanueva-Comacho was prosecuted for being an alien who had been convicted of Assault with a Firearm on a Person in Superior Court of Los Angeles, California, an aggravated felony, and who was thereafter removed or deported from the United States and then, was found to be in the Western District of Arkansas, having knowingly and unlawfully re-entered this country without having obtained permission from the Attorney General of the United States or the Secretary of the Department of Homeland Security to re-enter the United States, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). (Docket #2)

The offense to which Villanueva-Comacho pled guilty to is a federal offense not subject to the Assimilated Crimes Act. The Assimilated Crimes Act, or ACA, provides that in the absence of a governing federal statute, a person who commits a state crime on a federal enclave "shall be guilty of a like offense and subject to a like punishment ." 18 U.S.C. § 13(a). The ACA does not apply because there is a specific federal statute that applies, and the United States does not have to rely upon a state crime committed on a federal enclave to prosecute this case.

### Ineffective Assistance of Counsel

Although not one of his listed numbered grounds, Villanueva-Comacho also claims ineffective assistance of counsel. He claims that his counsel should have raised those points he has made in grounds one through three, and in addition he claims that his counsel should have sought a reduction in sentence below the guidelines and claiming a sentence under U.S.S.G. § 5K3.1.

U.S.S.G. § 5K3.1 provides: "Upon motion of the Government, the court may depart

6

downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides."

"Fast-track" programs provide expedited procedures in immigration cases and are primarily used in the southwestern border states (but do exist in Nebraska and South Dakota). *U.S. v. Panochero-Cresencio*, 198 Fed.Appx. 573, *575-576, 2006 WL 2884088,**2 (C.A.8 (Iowa - 3 (C.A.8 (Iowa (C.A.8 (Iowa),2006) The guidelines provide a downward departure if an authorized "fast-track " program is used. U.S. Sentencing Guidelines Manuel § 5K3.1.

Although Congress emphasized the importance of reducing sentence disparities in the Sentencing Reform Act of 1984, 18 U.S.C. § 3553 et seq., it also later passed the PROTECT Act to authorize fast track programs in districts overburdened by illegal reentry cases. See Publ. L. No. 108-21, 117 Stat. 650 (2003). Congress and the President have "concluded that the advantages stemming from fast-track programs outweigh their disadvantages, and that any disparity that results from fast-track programs is not 'unwarranted' ", *United States v. Sebastian*, 436 F.3d 913, 916 (8th Cir.2006) (quoting United States v. Perez-Chavez, No. 2:05-CR-00003PGC, 2005 U.S. Dist. LEXIS 9252, at *23 (D.Utah May 16, 2005)), and so directed the United States Sentencing Commission to "provide for guideline departures in certain judicial districts". See Sebastian, 436 F.3d at 916.

The sentence imposed for a defendant convicted of illegal reentry is not unreasonable because sentencing court does not consider sentences imposed for similarly situated defendants in other districts that employed fast-track sentencing programs. *United States v. Martinez-Trujillo*, 468 F.3d 1266 (10th Cir. 2006)

There is no fast track program available in the Western District of Arkansas and Villanueva-Comacho has made no showing that the prosecutor would have recommended defendant for the fast-track program even if it was available.

Sentencing disparities associated with availability or lack of availability of early disposition or "fast-track" programs in certain districts are not "unwarranted sentencing disparities" for purposes of statute setting out factors to be considered in imposing sentence. *United States v. Arevalo-Juarez*, 464 F.3d 1246 (11th Cir. 2006).

The District court was not required to impose a below-guidelines sentence upon defendant, who pleaded guilty to being in the United States without permission after his removal to Mexico, so that defendant's sentence would conform with sentences in fast-track districts.

The Eighth Circuit Court of Appeals has decided this issue. In *United States v. Sebastian*, 436 F.3d 913 (8th Cir. 2006), the court held that sentence disparities arising from the fast-track programs do not make a sentence unreasonable. Id. at 916. In so doing, the court stated: ". . .to require the district court to vary from the advisory guidelines based solely on the existence of early disposition programs in other districts would conflict with the decision of Congress to limit the availability of such sentence reduction to select geographical areas, and with the Attorney General's exercise of prosecutorial discretion to refrain from authorizing early disposition agreements in Eastern Missouri." Id.

Villanueva-Comacho claims that his counsel was ineffective in that he failed to obtain a reduced sentence because Villanueva-Comacho is subject to deportation upon release from prison. Villanueva-Comacho argues that unlike other prisoners, he does not receive any money for traveling or assistance. Villanueva-Comacho argues that he may have to endure extended

detention prior to actual deportation, and not be eligible for early release from prison. These factors do not justify a downward departure. U.S.S.G. § 2L1.2 determined the guideline range in this case. This guideline provision specifically applies to those who unlawfully enter or remain in the United States. Therefore, there should be no disparity to those who are sentenced under this guideline since it is reasonable to assume that all defendants sentenced pursuant to this guideline are going to be subject to deportation upon release from prison. The fact that a defendant is subject to deportation can be assumed to have taken into consideration by the Sentencing Commission.

At the Sentencing Hearing held on March 22, 2007, Villanueva-Comacho was asked by the Court if he was satisfied with Mr. Pierce's services as counsel. Villanueva-Comacho told the Court that he was satisfied with his services and that he had spent adequate time with him. (Sentencing Tr., p. 13) Villanueva-Comacho benefitted from Mr. Pierce's ability to negotiate a plea agreement which provided for the government to move for a third point for acceptance of responsibility. Pursuant to the plea agreement, the government moved for the third point for acceptance of responsibility. (Sentencing Tr., p. 14) Mr. Pierce presented a letter from the wife of Villanueva-Comacho at the sentencing hearing and read it into the record. (Sentencing Tr., p. 17) Mr. Pierce made a substantial argument for leniency at the sentencing hearing and set forth numerous factors to the Court in support of his plea. Based upon that information, Mr. Pierce requested the Court to sentence Villanueva-Comacho at the low end of the guideline range. (Sentencing Tr., p. 20) Counsel's strategy to make a reasonable argument for leniency rather than for some sentence out of the realm of reasonable consideration is not ineffective assistance of counsel. Trial strategy is not subject to being second-guessed when considering a motion

9

pursuant to § 2255. See, *Johnson v. United States*, 839, 842 (8th Cir. 2002).

A defendant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to section 2255. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). To establish a claim of ineffective assistance of counsel, Villanueva-Comacho must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, under the "deficient performance" component, he must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth Amendment." Strickland, 466 U.S. at 687. Second, under the "prejudice" component, he must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. see also, i.e. *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005)(post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense) Also, to the extent that Villanueva-Comacho's claims arise out the plea process, he must show a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. See Strickland, 466 U.S. at 688; United States v. Prior, 107 F.3d 654, 661 (8th Cir. 1997)

The "deficient performance" prong of the two-part Strickland test requires the movant to "show that his 'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting Strickland, 466 U.S. at 687) That showing can be made by demonstrating that counsel's performance "fell below an objective standard of reasonableness."

10

*Wiggins v. Smith*, 539 U.S. 510, 522, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)(internal citations omitted) There are two substantial impediments to making such a showing, however. First, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Rice, 449 F.3d at 897 (quoting Strickland, 466 U.S. at 690, 104 S.Ct. 2052). Second, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Id. (quoting Strickland, 466 U.S. at 689, 104 S.Ct. 2052); *Davis v. Norris*, 423 F.3d 868, 877 (8th Cir. 2005)("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance."). If the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

Even if counsel's performance was deficient, the movant must also establish "prejudice" to overcome the presumption of reasonable professional assistance. *Ledezma-Rodriguez*, 423 F.3d at 836; Davis, 423 F.3d at 877. To satisfy this "prejudice" prong, Villanueva-Comacho must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different...a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome." Rice, 449 F.3d at 897 (internal quotations omitted) Thus, it is not sufficient for a defendant to show that the error had some "conceivable effect" on the result of the proceeding because not every error that influences a proceeding undermines the reliability of the outcome of the proceeding. Morales v. Ault, __ F.3d __ , 2007 WL 397253 (8th Cir. 2007)(citing Odem v. Hopkins, 382 F.3d 846, 851 (8th Cir. 2004)) Although the two prongs of the "ineffective assistance" analysis are described as

sequential, courts "do not ... need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 *894 F.3d 616, 620 (8th Cir.1999)

Villanueva-Comacho cannot establish a valid claim of having received either deficient performance or actual prejudice under Strickland. See also, i.e. *Williams v. United States*, 343 F.3d 927 (8th Cir. 2003) (reasonable strategy to advise defendant to maintain guilty plea because doing so benefitted defendant by limiting his sentencing range); United States v. Granados, 168 F.3d 343, 345 (8th Cir. 1999)("the law in this circuit is clear that a defendant who pleads guilty has no right to be apprised of the sentencing options outside the statutory maximum and minimum sentences.").

### III. Conclusion

Based upon the forgoing I recommend that the instant motion, filed under 28 U.S.C. Section 2255, be dismissed with prejudice.

**The parties have ten days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. Section 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

IT IS SO ORDERED this 2nd day of September 2008

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
UNITED STATES DISTRICT JUDGE